

MAR 0 8 2006

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

UNITED STATES OF AMERICA <u>EX</u> <u>REL.</u>,
VICTOR E. BIBBY and BRIAN J. DONNELLY,

     RELATORS/PLAINTIFFS,

VS.

WELLS FARGO HOME MORTGAGE (a Division
of WELLS FARGO BANK, N.A), WASHINGTON
MUTUAL HOME LOANS, AN AFFILIATE OF
WASHINGTON MUTUAL BANK, F.A., FIRST
HORIZON LOAN CORPORATION (a Division of
FIRST HORIZON NATIONAL CORPORATION),
HOMEOWNERS MORTGAGE ENTERPRISES,
INC, SUNSHINE MORTGAGE CORPORATION,
NBANK CORP, FIRST CITY FINANCIAL CORP.
LTD., BSM FINANCIAL, L.P., MORTGAGE
INVESTORS CORPORATION (OHIO)., CHASE
MANHATTAN MORTGAGE CORP.(a division of
JP MORGAN CHASE & CO.), NATIONAL CITY
MORTGAGE, INC., and COMMONWEALTH
UNITED MORTGAGE (a division of NATIONAL
CITY CORPORATION), CITIMORTGAGE INC.,
GENERAL MOTORS ACCEPTANCE
CORPORATION, AMERICAN HOME
CORTGAGE CORP (NEW YORK),
COUNTRYWIDE HOME LOANS, INC,
COUNTRYWIDE LOANS PROCESSING, L.P.,
CMS MORTGAGE GROUP, INC., PHH
CORPORATION, ALTA FINANCIAL
CORPORATION, PRINCIPAL RESIDENTIAL
MORTGAGE, INC., BANK OF AMERICA
CORPORATION, MATRIX FINANCIAL
SERVICES CORPORATION, FIFTH THIRD
BANCORP, BB&T CORP., MARINE MORTGAGE
CO., HOMESIDE LENDING, INC., IRWIN
MORTGAGE CORPORATION, US BANK a/k/a
US BANCORP

     DEFENDANTS.

CIVIL ACTION FILE
NO.

**1:06-cv-0547**

<u>**FILED UNDER SEAL**</u>

<u>**COMPLAINT**</u>

# COMPLAINT

COMES NOW, VICTOR E. BIBBY and BRIAN J. DONNELLY, Plaintiffs/Relators, in the above-styled action, by and through counsel of record, Harmon, Smith, Bridges & Wilbanks, and states that this is an action brought on behalf of the United States of America by VICTOR E. BIBBY and BRIAN J. DONNELLY (collectively referred to as the "Relators") against WELLS FARGO HOME MORTGAGE (a Division of WELLS FARGO BANK, N.A), WASHINGTON MUTUAL HOME LOANS, AN AFFILIATE OF WASHINGTON MUTUAL BANK, F.A., FIRST HORIZON LOAN CORPORATION (a Division of FIRST HORIZON NATIONAL CORPORATION), HOMEOWNERS MORTGAGE ENTERPRISES, INC, SUNSHINE MORTGAGE CORPORATION, NBANK CORP, FIRST CITY FINANCIAL CORP. LTD., BSM FINANCIAL, L.P., MORTGAGE INVESTORS CORPORATION (OHIO), CHASE MANHATTAN MORTGAGE CORP.(a division of JP MORGAN CHASE & CO.), NATIONAL CITY MORTGAGE, INC., and COMMONWEALTH UNITED MORTGAGE (a division of NATIONAL CITY CORPORATION), CITIMORTGAGE INC., GENERAL MOTORS ACCEPTANCE CORPORATION, AMERICAN HOME CORTGAGE CORP (NEW YORK), COUNTRYWIDE HOME LOANS, INC, COUNTRYWIDE LOANS PROCESSING, L.P., CMS MORTGAGE GROUP, INC., PHH CORPORATION, ALTA FINANCIAL CORPORATION, PRINCIPAL RESIDENTIAL MORTGAGE, INC., BANK OF AMERICA CORPORATION, MATRIX FINANCIAL SERVICES CORPORATION, FIFTH THIRD BANCORP, BB&T CORP., MARINE MORTGAGE CO., HOMESIDE LENDING, INC., IRWIN MORTGAGE CORPORATION, US BANK a/k/a US BANCORP and affiliated entities

(hereinafter sometimes collectively referred to as "Defendants") pursuant to the Qui Tam provisions of the Civil False Claims Act, 31 U.S.C. §§ 3729-33.

## THE PARTIES

1.

Relator, VICTOR E. BIBBY is President and CEO of U.S. Financial Services, Inc. d/b/a Veteran's Mortgage Company. U.S. Financial Services is a Georgia corporation which operates offices and provides mortgage services as a licensed mortgage broker in seven U.S. states, including, and limited to, Georgia (Residential Mortgagee Licensee #16824), Florida (Residential Mortgagee Licensee #256621), Alabama (Residential Mortgagee Licensee #B8401), South Carolina (Residential Mortgagee License #00225-02M), North Carolina (Residential Mortgagee Licensee #B-119658), Tennessee (Residential Mortgagee Licensee #2876120), and Texas (Residential Mortgagee Licensee #MB 19053).

2.

Relator, BRIAN J. DONNELLY is Vice-President of Operation of U.S. Financial Services, Inc. d/b/a Veteran's Mortgage Company ("U.S. Financial").

3.

Relator, VICTOR E. BIBBY resides in Fulton County, Georgia. Relator, BRIAN J. DONNELLY resides in Cherokee County, Georgia. They bring this qui tam action based upon direct and unique information that they possess with regard to the fraudulent acts of defendants as set forth hereafter.

## DEFENDANTS

4.

Defendant, WELLS FARGO HOME MORTGAGE, a division of WELLS FARGO BANK, N A,  (hereinafter "Defendant Wells Fargo" or collectively as "Defendants") is  a diversified financial services institution,  whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place of operations is at 464 California  Street, San Francisco, CA 94104. As hereafter described, Relators processed Veteran Administration loans. Defendant Wells Fargo during all relevant times as to the conduct hereafter described, did transact, and does now presently transact its lending business in the State of Georgia and within the Northern District of Georgia. Said defendant may be served through its registered agent CORPORATION SERVICE COMPANY, 40 Technology Pkwy South, #300, Norcross, GA 30092.

5.

Defendant, WASHINGTON MUTUAL HOME LOANS, INC., an affiliate of WASHINGTON MUTUAL BANK, F.A. (hereinafter "Defendant Washington Mutual" or collectively with other defendants as "Defendants") is  a national financial institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place of operations is at 1201 Third Avenue, Seattle, WA 98101. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This

defendant may be served at one of its branch offices located at 2140 Peachtree Road, Atlanta, GA 30309-1350.

6.

Defendant FIRST HORIZON HOME LOAN CORPORATION, a Kansas corporation, being a division of FIRST HORIZON NATIONAL CORP. (whose headquarters is 165 Madison Avenue, Memphis, Tennessee) (hereinafter "Defendant First Horizon " or collectively with other defendants as "Defendants") is a financial services institution and national bank, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place of home loan operations is at 4000 Horizon Way, #1123, Irving, TX 75063. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. The registered agent for said defendant who may be served is C T CORPORATION SYSTEM, 1201 Peachtree Street NE, Atlanta, GA 30361.

7.

Defendant HOMEOWNERS MORTGAGE ENTERPRISES, INC., a South Carolina corporation (hereinafter "Defendant Homeowners Mortgage " or collectively with other defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place of loan operations is at 2530 Devine Street, Columbia, SC 29205. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending

business in the State of Georgia and within the Northern District of Georgia. This Defendant may

be served at its corporate headquarters at 2530 Devine Street, Columbia, SC 29205.

8.

Defendant SUNSHINE MORTGAGE CORPORATION, a Georgia corporation,

(hereinafter "Defendant Sunshine Mortgage " or collectively with other defendants as

"Defendants") is a mortgage company providing home loans, whose business in part is the

making of VA home loans, guaranteed by the United States Government, whose principal place

of business is at 2401 Lake Park Drive SE Suite 300, Smyrna, GA 30080. As hereafter described,

Relators processed Veteran Administration loans. This Defendant during all relevant times as to

the conduct hereafter described did transact, and does now presently transact, its lending

business in the State of Georgia and within the Northern District of Georgia. The registered agent

for said defendant who may be served is DAVID BISBEE, 2929 Tall Pines Way, Atlanta, GA

30345.

9.

Defendant NBANK CORP is a Georgia corporation, located at 1731 N Elm Street,

Commerce, GA 30329 (hereinafter "Defendant NBank" or collectively with other defendants as

"Defendants") is a financial services institution, whose business is in part the making of VA

home loans, guaranteed by the United States Government, whose principal place of home loan

operations is at 1731 N. Elm Street, Commerce, GA 30329.  As hereafter described, Relators

processed Veteran Administration loans. This Defendant during all relevant times as to the

conduct hereafter described did transact, and does now presently transact, its lending business in

the State of Georgia and within the Northern District of Georgia. The registered agent for said

defendant who may be served is Robert E. Curry, Jr., 1731 North Elm Street, Commerce, GA 30529.

10.

Defendant  FIRST CITY FINANCIAL CORP. LTD (hereinafter "Defendant First City" or collectively with other defendants as "Defendants") is  a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place of  operations is at 777 Hornby Street, First City Building, Vancouver, B.C. V6Z 2K3 Canada . As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. The last registered agent for said defendant who may be served is C T CORPORATION, 1201 Peachtree Street, NE, Atlanta, GA 30361.

11.

Defendant BSM FINANCIAL, LP, a limited Nevada partnership (hereinafter "Defendant BSM Financial" or collectively with other defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place of home loan operations is at 16479 Dallas Parkway, Suite 700, Addison, TX 75001. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. The registered agent for said defendant who may be served is C T CORPORATION, 1201 Peachtree Street, NE Atlanta, GA 30361.

12.

Defendant MORTGAGE INVESTORS CORPORATION (OHIO), an Ohio corporation (hereinafter "Defendant Mortgage Investors" or collectively with other defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place of home loan operations is at 6090 Central Avenue, St Petersburg, FL 33707. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. The registered agent for said defendant who may be served is C T CORPORATION, 1201 Peachtree Street, NE, Atlanta, GA 30361.

13.

Defendant CHASE MANHATTAN MORTGAGE CORP., a wholly owned subsidiary of JP MORGAN CHASE & CO. (hereinafter "Defendant Chase Mortgage" or collectively with other defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place of loan operations is at 270 Park Avenue, New York, NY 10017. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This Defendant may be served at its corporate headquarters at 270 Park Avenue, New York, NY 10017.

14.

Defendant NATIONAL CITY MORTGAGE, INC. , an Ohio corporation and subsidiary of National City Bank of Indiana (hereinafter "Defendant National City " or collectively with other defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place of business is 3232 Newmark Drive, Miamisburg, OH 45342.  As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. The registered agent for said defendant who may be served is C T CORPORATION, 1201 Peachtree Street NE, Atlanta, GA 30361.

15.

Defendant COMMONWEALTH UNITED MORTGAGE, a division of National City Corporation (hereinafter "Defendant Commonwealth United" or collectively with other defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is National City Center, 1900 East Ninth Street, Cleveland, OH 44114. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This Defendant may be served at its corporate headquarters at National City Center, 1900 East Ninth Street, Cleveland, OH 44114.

16.

Defendant  CITIMORTGAGE, INC., a New York corporation (hereinafter "Defendant Citimortgage" or collectively with other defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is 1000 Technology Drive, MS 140, O'Fallon, MO 63304. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. The registered agent for said defendant who may be served is CT CORPORATION SYSTEM, 1201 Peachtree Street, NE, Atlanta, GA 30361.

17.

Defendant  GENERAL MOTORS ACCEPTANCE CORPORATION,  a Delaware corporation (hereinafter "Defendant GMAC " or collectively with other defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is 2000 Renaissance Center, 12th Floor, Detroit, MI 48265. As hereafter described,  Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. The registered agent for said defendant who may be served is CORPORATION PROCESS COMPANY, 180 Cherokee Street, NE, Marietta, GA 30060.

18.

Defendant  AMERICAN HOME MORTGAGE CORP (NEW YORK) a/k/a

AMERICAN BROKERS CONDUIT (hereinafter "Defendant " or collectively with other

defendants as "Defendants") is a financial services institution, whose business is in part the

making of VA home loans, guaranteed by the United States Government, whose principal place

is located in New York. As hereafter described, Relators processed Veteran Administration

loans. This Defendant during all relevant times as to the conduct hereafter described did transact,

and does now presently transact, its lending business in the State of Georgia and within the

Northern District of Georgia. The registered agent for said defendant who may be served is

CORPORATION SERVICE COMPANY, 40 Technology Pkwy South #300, Norcross, GA

30092.

19.

Defendant  COUNTRYWIDE HOME LOANS, INC. and COUNTRYWIDE HOME

LOANS SERVICING, L.P., (hereinafter collectively "Defendant Countrywide " or collectively

with other defendants as "Defendants") are affiliated financial services institutions, whose

business is in part the making of VA home loans, guaranteed by the United States Government,

whose principal place is 4500 Park Granada #11, Calabasas, CA 91302. As hereafter described,

Relators processed Veteran Administration loans. Both these defendants during all relevant times

as to the conduct hereafter described did transact, and do now presently transact, their lending

business in the State of Georgia and within the Northern District of Georgia. The registered agent

for said defendants who may be served is CORPORATION SERICE COMPANY, 40

Technology Pkwy South, #300, Norcross, GA 30092.

20.

Defendant  CMS MORTGAGE GROUP, INC, a Michigan corporation (hereinafter "Defendant CMS" or collectively with other defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is 24275 Northwestern Hwy, Suite 201, Southfield, MI 48075. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This Defendant may be served at its principal offices located at 24275 Northwestern Hwy, Suite 201, Southfield, MI 48075.

21.

Defendant PHH CORPORATION, a/k/a PHH Mortgage Corporation and f/k/a Cendant Mortgage Corporation, a Maryland corporation (hereinafter "Defendant PHH" or collectively with other defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is 3000 Leadenhall Road, Mt. Laurel, N. J. 08054. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This Defendant may be served at its offices located at 3000 Leadenhall Road, Mt. Laurel, NJ 08054.

22.

Defendant ALTA FINANCIAL CORPORATION,  a Georgia corporation (hereinafter "Defendant ALTA" or collectively with other defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is 2727 Paces Ferry Road, Suite 1800, Atlanta, GA 30339. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. The registered agent for said defendant who may be served is RICK A KROUGH, 2727 Paces Ferry Road, Suite 1800, Atlanta, GA 30339.

23.

Defendant  PRINCIPAL RESIDENTIAL MORTGAGE, INC., acquired by Citi-Mortgage, a member of CitiMortgage Group, (hereinafter "Defendant " or collectively with other defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is at 1000 Technology Drive, O'Fallon, MO 63368. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This Defendant may be served at its offices located at 1000 Technology Drive, O'Fallon, MO 63368.

24.

Defendant BANK OF AMERICA CORPORATION, a Delaware corporation (hereinafter "Defendant Bank of America" or collectively with other defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is 401 N Tryon St NC1-021-02-20, Charlotte, NC 28255. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. The registered agent for said defendant who may be served is C T CORPORATION, 1201 Peachtree Street, Atlanta, GA 30361.

25.

Defendant MATRIX FINANCIAL SERVICES CORPORATION, a Arizona corporation, being a wholly owned subsidiary of Matrix Capital Bank (hereinafter "Defendant Matrix" or collectively with other defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place of business is 2133 W. Peoria Ave, Suite 100, Phoenix, AZ 85029. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. The registered agent for said defendant who may be served is C T CORPORATION, 1201 Peachtree Street, Atlanta, GA 30361.

26.

Defendant  FIFTH THIRD BANCORP a/k/a FIFTH THIRD BANK, an Ohio corporation (hereinafter "Defendant Fifth Third" or collectively with other defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is Fifth Third Center, Cincinnati, OH 45263. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This Defendant may be served at its offices located at Fifth Third Center, Cincinnati, OH 45263.

27.

Defendant BB&T CORP., a North Carolina corporation (hereinafter "Defendant BB&T" or collectively with other defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is 200 West Second Street, Winston-Salem, NC 27101. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This Defendant may be served at its offices located at 200 West Second Street, Winston-Salem, NC 27101.

28.

Defendant MARINE MORTGAGE CO., an Oklahoma corporation (hereinafter "Defendant Marine Mortgage" or collectively with other defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is 999 NW Grand Blvd, Oklahoma, OK 73118. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. The registered agent for said defendant who may be served is DAVID B. MANLEY III, 4390 Flippen Trail, Norcross, GA 30092.

29.

Defendant HOMESIDE LENDING, INC., a Florida corporation, acquired by WASHINGTON MUTUAL, INC., located in Seattle, Washington  (hereinafter "Defendant " or collectively with other defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is 1201 3d Avenue, Seattle, WA 98101. As hereafter described,  Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. This Defendant may be served at its offices located at 1201 3d Avenue, Seattle, WA 98101.

30.

Defendant IRWIN MORTGAGE CORPORATION,  an Indiana corporation (hereinafter "Defendant Irwin Mortgage" or collectively with other defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is 10500 Kincaid Drive, Fishrs, IN 46038. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia. The registered agent for said defendant who may be served is C T CORPORATION, 1201 Peachtree Street NE, Atlanta, GA 30361.

31.

Defendant US BANK a/k/a  US BANCORP (hereinafter "Defendant US BANK" or collectively with other defendants as "Defendants") is a financial services institution, whose business is in part the making of VA home loans, guaranteed by the United States Government, whose principal place is US Bancorp Center, 800 Nicollet Mall, Minneapolis, MN 55402. As hereafter described, Relators processed Veteran Administration loans. This Defendant during all relevant times as to the conduct hereafter described did transact, and does now presently transact, its lending business in the State of Georgia and within the Northern District of Georgia.  This Defendant may be served at its offices located at US Bancorp Center, 800 Nicollet Mall, Minneapolis, MN 55402.

## JURISDICTION AND VENUE

32.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. §§ 3732(a) and 3730(b). This Court has jurisdiction to entertain this qui tam action. Relators are an "original source" and can institute this action in the name of the United States as contemplated by the Civil False Claims Act, 31 U.S.C. Sections 3729-33 (hereinafter "FCA").

33.

Venue is appropriate as to each Defendant, in that one or more of Defendants can be found in, reside in, and/or transact business in this judicial district. Additionally, acts proscribed by 31 U.S.C. § 3729 have been committed by one or more of the Defendants in this judicial district. Therefore, within the meaning of 28 U.S.C. § 1391(c) and 31 U.S.C. § 3732(a), venue is proper.

34.

Relators have presented the Government with disclosures regarding the FCA violations described herein as required by 31 U.S.C. §. 3730(b)(2).

## STATUTORY BACKGROUND

35.

The False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1) makes knowingly presenting, causing to be presented, or conspiring to present to the United States any false or fraudulent claim for payment a violation of Federal Law punishable by three times the amount of the actual damages the Government sustains and a civil monetary penalty of between $5,500 and $11,000 per claim made.

36.

The FCA, 31 U.S.C. § 3729(a)(2) makes knowingly presenting, causing to be presented, or conspiring to make or use a false record or statement to get a false or fraudulent claim paid or approved by the Government a violation of federal law punishable by three times the amount of the actual damages the Government sustains and a civil monetary penalty of between $5,500 and $11,000 per claim made.

37.

The FCA defines a "claim" to include any request or demand, whether under contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested. "Claims" may also include the submission of information and documentation to the Government which is material to the Government's decision to guarantee debt or incur risks of repayment and/or loss on behalf of Government beneficiaries such as our Veterans of the Armed Forces ("Veterans").

38.

For purposes of the FCA, the terms "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

## SUMMARY OF FACTUAL BACKGROUND

### 39.

Relator Bibby is the President and CEO of U.S. Financial Services. He founded this company in August 2001. He has been in the mortgage business operating as a loan officer from December, 1996 through the present time. He has developed substantial expertise with regard to VA mortgage loans. He is a licensed mortgage broker in seven states.

### 40.

Relator Donnelly is Vice President of Operations for U.S. Financial Services, Inc. He has been employed in the mortgage business industry as a loan officer fox six years and his specialty is originating VA loans. In August, 2001, he joined U.S. Financial Services. He is licensed as a mortgage loan officer in Tennessee and South Carolina.

### 41.

U.S. Financial Services specializes in the brokering of ad origination of VA loans. The company has originated more than $400,000,000.00 in VA IRRRL loans in seven states since 2001. IRRRL stands for "Interest Rate Reduction Refinancing Loan."

### 42.

A VA IRRRL loan is a refinancing home loan program available to Veterans or active duty borrowers who currently hold their VA entitlement with regard to the property being refinanced. The program is designed to give Veteran borrowers the opportunity to lower their current interest rates or shorten the terms of their home mortgages with limited documentation required.

43.

The following is a brief description of the steps describing how a loan application flows from its point of origination with an originating broker to the point where the VA guarantees the loan after closing:

Step 1 – licensed mortgage brokers (such as U.S. Financial Services) originates the loan by advertising to the general public.  When the broker is contacted by a Veteran borrower ("Borrower") and a loan application is obtained from the Borrower, the broker acts as processor in gathering the documentation that will be required by the lender as a condition for underwriting the loan;

Step 2 – each approved VA lender (such as the defendants) have written guidelines that are provided to and used by the broker in determining what documentation is needed from the Borrower to qualify for VA loan funding and servicing.  Before the broker can originate a loan, the broker must be sponsored by an approved VA lender.  The brokers do not underwrite or service loans.  Conversely, it is the lender's role is to underwrite the loan and make sure that the loan adheres to all VA guidelines and regulations before approving the loan application and before giving a final "clear to close" status on the loan.  In Step 2, the lender employs underwriters to review the loan application that was submitted by the broker on behalf of the Borrower to be sure that the documentation is satisfactory.  It is the lender's job to underwrite the file to make sure that it conforms to program guidelines and VA guidelines;

Step 3.  If there are any problems or "conditions" that the lender and/or underwriter finds in Step 2, it is the job of the broker to work with the Borrower to "clear" any of these "conditions."  All conditions must be "cleared" in order to obtain a "clear to close" status on the file.  In essence, if the underwriter determines that the Borrower does not meet the lender's guidelines or that a problem exists with regard to meeting VA lending guidelines, it becomes the job of the broker to address that problem to see if it can be cured;

Step 4.  Once the file is underwritten and cleared to close, the lender gives closing instructions to the attorney or title company performing the closing on behalf of the Borrower. At that point, the HUD statement or settlement statement is prepared by the attorney/title company from these instructions.  The HUD is cleared and approved as being accurate by the lender before the closing takes place.  When this happens, the closing agent, whether attorney or title company, closes the loan per the specific instructions provided by the lender.  It is worth noting that there are two different types of closing requirements, depending upon the state where the closing is taking place.  Certain states, such as Georgia, are considered "attorney states" which require the use of an attorney to close the VA loans.  Other states, such as Florida are "title states" and no attorney is needed because a title company can act as closing agent for a VA loan;

Step 5.  On a refinance loan, the Borrower has three days to rescind the loan after the closing during which the loan can be cancelled.  If the loan is not cancelled, then the attorney/title company completes the funding of the loan with the wired funds provided by the lender.  After the closing, the loan packages, to include the HUD-1 and other VA forms are again certified by the lender, and the charges owed to the Department of Veterans Affairs in

- 22 -

consideration for guaranteeing the loan are sent out by the closing agent. The VA charges one-half of one percent as a fee for guaranteeing VA IRRRL loans. In Step 5, the lender certifies the accuracy of the file to the Veterans Administration through the use of VA Form 26-1820 (Loan Disbursement and Certification Form). The lender sends this form along with the VA funding fee to the Veterans Administration.

Step 6 – after the loan is finalized, a copy of the HUD statement is maintained by the closing agent and sent to the broker and the lender. Relator believes that the VA also gets a copy of the HUD forms.

## SUMMARY OF FRAUD FACTS

44.

In November 2005, Relators were asked by two of the VA lenders that they regularly work with to change the way that certain line items are disclosed on the HUD settlement statements for VA IRRRL loans. In investigating these requests, Relators closely reviewed the underwriting guidelines that govern the allowable and unallowable fees that a Veteran Borrower can lawfully be charged in the context of a VA loan.

45.

As a part of the process, Relators discovered that a Veteran Borrower cannot be charged attorney fees, escrow fees or closing fees. However, Veteran Borrowers can be charged a reasonable fee for a title examination which should cost approximately $125.00 to $175.00. This

range of title examination fees is the industry standard in all seven states wherein U.S. Financial operates.

46.

Relators have it, upon information and belief, that the standard $125.00 to $175.00 charge for title examination services represents the industry standard charge for that service across the United States.  In many instances, Relators have written quotes from attorneys and title companies specifying that the title examinations for all VA loans would be charged in that $125.00 to $175.00 range.  The most typical title examination charge is $150.00.

47.

Despite the actual costs of a title examination, the writers have observed over the years that the vast majority of the VA loans that they have brokered charged title examination charges in amounts over $500.00 to the Veteran Borrower.  Relators discovered that the disparity between the actual title examination fee ($125.00 to $175.00) and the amount being charged for title examinations ($500.00 to $900.00) is the result of the illegal lumping of other loan costs, such as attorney fees, escrow fees or closing fees into the category on the HUD settlement statement listed as being "title examination fee."  The fee is usually shown on Line 1103 or Line 1104 of the HUD settlement statement.

48.

Prior to the time when Relators began to review the VA guidelines applicable to title examinations and attorneys fees a few months back, Relators had been told by lenders that attorneys fees, escrow fees and closing fees were allowed to be charged to the Veteran Borrower, and these charges should be reflected on the "title examination" line of the HUD form.  Despite

these inaccurate statements by the lenders, it is very clear that it is improper and illegal to charge the Veteran Borrower for these additional closing charges and attorney fees under the VA guidelines. See 38 CFR 36.4312(a), (d) and (e). The lenders and underwriters have been shifting the burden for these costs to the Borrower and increasing the risks to the Government by placing these improper charges on the HUD statement as being "title examination" charges. This practice is a ruse which damages the Veteran Borrower and the government. Because these costs are added in the VA loan amount being financed, the Government's risk is increased on each and every loan because the VA guarantees each VA loan in the event of default by Borrower.

49.

The Relators have reviewed hundreds of files in their offices. They discovered that lenders were routinely shifting impermissible charges to the Veteran Borrower in VA loans. Accordingly, the average VA Borrower is initially damaged in amounts routinely ranging from $400.00 to $750.00. The Government is also damaged because the Government is guaranteeing the repayment on the VA loans and these unnecessary and illegal charges raise the risks of the default on these VA IRRRL loans. The average default rate on VA IRRRL loans exceeds 18 percent.

50.

It is very important and material that the lender and underwriter comply with the applicable code of federal regulation laws and VA lending guidelines. As a part of the lender's certification on VA Form 26-1820, the lender is required to certify that: "the lender has not imposed and will not impose any charges or fees against the veteran borrower in excess of those permissible under the schedules set forth in paragraph (d) of 38 CFR 36.4312." If the lender

cannot expressly certify to the VA that the Borrower is not being overcharged, then the VA is unwilling to guarantee the loan. Hence, the lender's signature on VA Form 26-1820 is a material and necessary condition that the Government requires before the IRRRL loan will be guaranteed by the Government.

51.

The Relators have knowledge that the defendant lenders have systematically falsified the lender certifications required by the VA by falsifying the records and information submitted to the VA on Form 26-1820. Specifically, the defendants know that they are adding impermissible attorney's fees and other charges to the Borrower by lumping these fees in to the "title examination" charges reflected on line 1103 or 1104 of the HUD settlement statement.

52.

It is important to understand that it is the lenders who contract with the closing attorneys to handle IRRRL closings. The closings attorneys are acting as the agent of the lender. The lenders send closing instructions to the closing attorney. The brokers who originate the loan do not select, contract or direct the closing attorneys with regard to an IRRRL closing.

53.

It is also important to examine the motive behind the lender's decision to pass on the cost of the attorney's fees to the VA borrower. The motivation is based on the monetary advantage and competitive advantage to the lender that is created in this process.

54.

The lenders directly profit from this scheme because they are passing a "lender paid fee" directly to the veteran borrower. This means that they are saving approximately $400.00 to

$750.00 on each closing.  Additionally, if the lender tried to pass the attorney's fees to the originating broker (paid outside of closing), this would substantially reduce the amount of IRRRL refinance transactions because this would directly impact the broker's profits which would reduce the broker's incentive to originate these loans for the lenders.  The lender's VA refinance business would suffer greatly if they passed the additional costs to the brokers.  There are already a number of VA "unallowables" that the broker must absorb.  These fees include the lender's underwriting fees and document preparation fees that cannot be passed to the veteran borrower.  If an additional $400.00 were passed on to the broker, the cost would be too high for the broker to absorb.

55.

Additionally, by passing on the attorney's fees to the lender, the lender protects its competitive position in the market thereby encouraging originating brokers to send business to the lender.  The lender's VA refinance business is enhanced by creating as much financial incentive as possible for the originating brokers to continue to originate these loans and send them to the defendant lenders.

56.

The Relators have it, upon information and belief that the underwriting violation referenced above is a nationwide problem affecting hundreds of thousands of VA guaranteed loans.  Even if the original damage to the VA Borrower and the Government is small at the inception, the damage and risk associated therewith continues to compound each day because interest runs on the principle amount owed on a daily basis which includes the improperly shifted attorney fee charges.  By way of example, if the defendant lender improperly shifts $400.00 to

the Veteran Borrower at the closing of the refinance, by the time the loan comes due, over

$900.00 in damages has accrued due to the accumulation of interest and finance charges over the

life of a VA IRRRL loan.

## **VIOLATION OF CIVIL FALSE CLAIMS ACT, 31 USC § 3729-33 ET SEQ.**

57.

Paragraphs 1 through 35are incorporated into Count I as if fully set forth herein.

58.

This is a civil action brought by Relators on behalf of the United States against the

Defendants pursuant to the Federal False Claims Act, 31 U.S.C. § 3729-33.

59.

Defendants knowingly or recklessly disregarded or in deliberate ignorance of the truth or

the falsity of the information involved, presented or caused to be presented, false or fraudulent

claims for payment to the Veterans Administration and/or federal programs enacted for the

benefit of Veteran Borrowers, with said acts being in direction violation of, *inter alia* 31 U.S.C.

§ 3729(a)(1).

60.

Further, Defendants in reckless disregard or in deliberate ignorance of the truth or the

falsity of the information involved, made, used, caused to be made or caused to be used, false or

fraudulent records and statements to get false or fraudulent claims paid or approved, in violation

of *inter alia* 31 U.S.C. § 3729(a)(2).

61.

More specifically, Defendants caused false certifications to be made on VA form 26-1820.  These certifications are a material condition to participation as a lender in the VA IRRRL loan programs.  Had the Government or the Veterans Administration known that the VA guidelines and regulations were not being adhered to in direct contravention to the express certifications made by Defendants, the VA would not have guaranteed the VA loans in question.  As a result of the Government's reliance upon the false and misleading statements and certifications of the Defendants, the Government has been damaged and will continue to be damaged from the tens of thousands of VA loans improperly certified by Defendants.

62.

The Government and the Veterans Administration were not aware of the falsity of the claims and certifications and/or statements made by Defendants or caused to be made by Defendants.   The Government and the Veterans Administration, in reliance on the accuracy of the claims and/or statements, agreed to guarantee hundreds of thousands of VA IRRRL loans for the purposes of assuring payment to Defendants in the event of default on said loans by the Veteran Borrowers.  Tens of thousands of these VA loans resulted in defaults by the VA Borrower which caused great damage to the Government.

63.

As a result of the Defendants' actions set forth above, the United States has been severely damaged.

**WHEREFORE**, Relators pray for judgment against Defendants as follows:

(a)     That Defendants be ordered to cease and desist from submitting and/or causing the submission of false claims or false certifications or otherwise violating 31 U.S.C. § 3729-33;

(b)     That judgment be entered in favor of the United States and Relator and against the Defendants for all in damages available pursuant to 31 U.S.C. § 3729-33, plus a civil penalty of not less than Five Thousand Five Hundred and No/100 ($5,500.00) Dollars, and no more than Eleven Thousand and No/100 ($11,000.00) Dollars per claim, as provided by 31 U.S.C. § 3729(a), to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the schemes undertaken by Defendants; and

(c)     That Relators be awarded the maximum amount permissible according to 31 U.S.C. § 3730(d); and

(d)     That judgment be granted for the United States of America and Relator and against Defendants for any and all costs including, but not limited to, court costs, expert fees, and all attorneys' fees incurred by Relator in the prosecution of this suit; and

(e)     That the United States and Relator be granted such other and further relief as the Court deems to be equitable and just.

This ___7th___ day of ____March_____, 2006

Respectfully Submitted,

_____
Marlan B. Wilbanks
State Bar No. 758223

Ty M. Bridges
State Bar No. 081500

1795 Peachtree Road, NE, Suite 350
Atlanta, Georgia  30309-2339
Phone:  404-881-1200
Fax:     404-881-8523

Attorneys for Relators Victor E. Bibby and
Brian R. Donnelly